IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STATE ex rel
      RALPH APPLEGATE,

        Plaintiff,

                            Case No. C2-08-092
vs.                      Judge Edmund A. Sargus, Jr.
                            Magistrate Judge Terence P. Kemp

FRANKLIN COUNTY BOARD
      OF ELECTIONS, et al.,

        Defendants.

## OPINION AND ORDER

On January 31, 2008, Plaintiff, Ralph A. Applegate, proceeding *pro se*, filed a Verified

Complaint, Motion for Temporary Restraining Order and Motion for Preliminary Injunction. This

matter is now before the Court for consideration of Plaintiff's Motion for Temporary Restraining

Order ("TRO"). Plaintiff moves the Court pursuant to Federal Rule of Civil Procedure 65 for an

Order directing Defendants, the Franklin County Board of Elections, as well as its director,

Matthew M. Damschroeder and Board Members, Michael F. Colley, Kimberly E. Marinello,

Carolyn C. Petree and David S. Anthony ("Defendants"), in effect, to certify his candidacy in the

2008 primary as a Republican for the Fifteenth Congressional District of Ohio.[1] Defendants have

---

[1]     A *pro se* litigant's pleadings must be, and in this instance are construed liberally and
have been held to less stringent standards than formal pleadings drafted by attorneys. *Haines v. Kerner*,
404 U.S. 519, 520-21 (1972). To the extent, however, that Plaintiff seeks a writ of mandamus in this
Court to compel Defendants to place his name on the ballot as a candidate for a particular office in the
March 4, 2008 election, the writ will not lie to review the determination by a Board of Elections that a
candidate is ineligible to assume the office he seeks or that his petition is invalid, in the absence of
allegations of fraud, corruption, abuse of discretion, or a clear disregard of statutes or applicable legal
principles. *Brockington v. Rhodes,* 396 U.S. 41, 43-44 (1969)(citing *State ex rel. Flynn v. Board of
Elections,* 164 Ohio St. 193, 129 N.E.2d 623 (Ohio 1955), overruled on other grounds, *State, ex rel.
Schenck, v. Shattuck,* 1 Ohio St.3d 272, 439 N.E.2d 891 (Ohio 1982)). The Court does not review the

filed their Memorandum in Opposition. The Court also considers Plaintiff's response submitted to the Court on February 5, 2008. For the reasons that follow, Plaintiff's Motion is denied.

**I.**

On December 10, 2007, Plaintiff filed petitions with the Franklin County Board of Elections ("Board") seeking to be placed on the 2008 primary ballot as a Republican candidate for the Fifteenth Congressional District of Ohio. (Dennis L. White Aff. ¶ 4). Plaintiff presented nine (9) part-petitions with signatures to the Board.

On January 11, 2008, the Board met in special session for purposes of certifying the validity and sufficiency of the candidates to appear on the March 4, 2008 primary election ballot. (White Aff. ¶ 5.) Upon recommendation of staff findings that Plaintiff's petitions lacked sufficient minimum valid signatures, the Board did not certify Plaintiff's candidacy. The Board found Plaintiff's petitions contained discrepancies between the number of signatures that were certified as having been witnesses by the circulator and the number of actual signatures appearing on eight (8) of Plaintiff's nine (9) petitions. Specifically, the Board found as follows:

> twenty-two (22) signatures were affixed to part petition number 000024, of which four (4) had been struck, yielding eighteen (18) potential valid signatures, while the circulator stated that the part petition contained only eight (8) signatures; twenty-two (22) signatures were affixed to part petition number 000025, while the circulator stated that the part petition contained only fifteen (15) signatures; twenty-one (21) signatures were affixed to part petition number 000026, while the circulator stated that the part petition contained only 13 signatures; twenty-two (22) signatures were affixed to part petition number 000028, of which one (1) had been struck, yielding twenty-one (21) potential valid signatures, while the circulator stated that the part petition contained only six (6) signatures; twenty-two (22) signatures were affixed to part petition number 000029, of which one (1) had been struck, yielding twenty-one (21) potential valid signatures, while the circulator stated that the part petition contained only fourteen (14) signatures; twenty-two (22) signatures were affixed to

---

Motion as to Plaintiff's request for injunctive relief.

part petition number 000030, of which three (3) had been struck, yielding nineteen (19) potential valid signatures, while the circulator stated that the part petition contained only eleven (11) signatures; eighteen (18) signatures were affixed to part petition number 000031, of which two (2) had been struck, yielding sixteen (16) potential valid signatures, while the circulator stated that the part petition contained only twelve (12) signatures; eleven (11) signatures were affixed to part petition number 000032, while the circulator stated that the part petition contained only ten (10) signatures.

(White Aff., ¶ 6.)

According to Defendants, the Ohio Secretary of State Election Official Manual states that

"[i]f the number indicated (on the circulator's statement) is less than the actual number of signatures,

the entire part-petition shall be invalidated."  (White Aff. ¶ 6.[2])

According to his Verified Complaint, Plaintiff has over twenty years of experience with

Ohio's elections laws. He gathered the signatures for the petitions himself and "check[ed] and

rechecked[ed]" the signatures as he collected them.  (Compl., ¶ 10.)  Plaintiff notes that the

Circulator Statement on each of the petitions provides in pertinent part:

> I, _____, declare under penalty of election falsification . . . that I am the circulator of the foregoing petition containing _____ (number) signatures; that I witnessed the affixing of every signature; and that every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be . . . .

(Compl., ¶ 11); (White Aff. Exh. B.)  Each petition also contains a statement that "whoever

commits election falsification is guilty of a felony of the fifth degree."  (*Id*.)

Plaintiff maintains that he knew that several[3] of the 178 signatures on his nine part-petitions

---

[2]     White's Affidavit indicates that the Manual or the page within the Manual on which this statement is made, is attached to his affidavit.  It is not.

[3]     Plaintiff variously references that 87 signatures were invalid (Compl., ¶ 13); a "few" were invalid (Compl., ¶ 16); and, ultimately, that only 91 of the 178 were valid (Compl., ¶¶ 18-19.)

-3-

were, or likely were invalid. (Compl., ¶ 13.)[4] He contends that he could not, therefore, truthfully declare that each of the signatures on the part-petitions was "the signature of the person whose signature it purports to be . . . ." To do so, according to Plaintiff, would have caused him to commit the felony of election falsification. (Compl,. ¶¶ 13-14.) Plaintiff therefore did not count the names of those individuals whose signatures he knew to be invalid, and revised his Circulator Statement to reflect the number of "valid" signatures that each part-petition contained.

Nonetheless, because of the discrepancies in the signatures, as discussed above, the Board did not certify Plaintiff's candidacy for the 2008 primary ballot. The Board sent a letter via first class mail on January 11, 2008, to Plaintiff informing him that the Board did not certify his candidacy for the 2008 primary ballot. (Compl., ¶ 20); (White Aff., ¶ 7.)

Plaintiff appealed the decision to the Board on January 18, 2008.[5] (Compl., ¶ 23.) The Board heard Plaintiff's appeal at a special session on January 23, 2008. (White Aff., ¶ 8.) The Board denied Plaintiff's request to be certified for the March 4, 2008 primary election without written opinion.

Plaintiff filed his Complaint with this Court eight (8) days later, on January 31, 2008. Plaintiff alleges that the Board violated his due process and equal protection rights under the Fifth and Fourteenth Amendment to the United States Constitution. (Compl. ¶ 5.) Plaintiff seeks a writ of mandamus compelling the Board to certify Plaintiff to the 2008 primary ballot; a declaratory judgment that the Board's rejection of his candidacy was "arbitrary, capricious, and

---

[4]     Although it is somewhat unclear from his Verified Complaint, Plaintiff seems to indicate that he was denied access to Defendant's computer records, "in violation of his constitutional rights," so that he could confirm the voter registration records against the signatures he collected. (Compl., ¶ 16.)

[5]     White attests that Plaintiff appealed the decision on January 16, 2008. (White Aff., ¶ 8.)

unconstitutional"; and preliminary and permanent injunctions prohibiting the Board from conducting the March 4, 2008 primary election until this case is resolved. (Compl. ¶¶ 29-31.)

Under Ohio law, the primary election date is March 4, 2008. Pursuant to Ohio Revised Code § 3509.01, absentee voting for the 2008 primary begins on Friday, February 8, 2008, twenty-five days before the primary election.[6]

## II.

Upon an application for a temporary restraining order, the Court must consider the following four factors: "'(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief.'" *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)(quoting *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 784 (2004)); s*ee also Sandison v. Michigan High School Athletic Assoc., Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995). The four factors are to be balanced and are not prerequisites that must be satisfied. Instead, "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992).

---

[6]     Section 3509.01 provides that "[t]hose ballots shall be designated as 'Absent Voter's Ballots' and shall be printed and ready for use on the thirty-fifth day before the day of the election, except that those ballots shall be printed and ready for use on the twenty-fifth day before the day of a presidential primary election."  Ohio Rev. Code § 3509.01.

## III.

### A.     Likelihood of Success on the Merits

Plaintiff challenges Ohio Revised Code § 3501.38 on the basis that it deprives him of due process and equal protection as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.   In this case, therefore, Plaintiff asserts that the circulator-statement requirement of Ohio Revised Code § 3501.38 is unconstitutional.   The Court concludes that Plaintiff has not demonstrated a substantial likelihood of success on the merits of his claims.

Although he has not cited the statute, presumably Plaintiff seeks to state of cause of action in this Court under 42 U.S.C. § 1983.   To prevail under § 1983, Plaintiff must establish (1) that he was deprived of a right secured by the Constitution or the laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Moore v. City of Paducah*, 890 F.2d 831, 833-34 (6th Cir. 1989). To evaluate Plaintiff's § 1983 claims in this case, the Court considers whether Plaintiff's constitutional rights were violated when he was compelled to comply with Ohio Revised Code § 3501.38(E)(1).

Each state has a legitimate interest to protect the integrity of its political processes from frivolous or fraudulent candidacies, and is not constitutionally obligated to provide instantaneous access to the ballot. *Jenness v. Fortson*, 403 U.S. 431, 432 (1971).   Legislative limitations to ballot access arise from Article 1 of the Constitution authorizing the states to prescribe "the Times, Places, and Manner of holding Elections for Senators and Representatives." U.S. Const. Art. I, § 4, cl. 1. The mere existence of restrictions on ballot access, therefore, raises no issue of validity unless they violate prohibitions elsewhere in the Constitution. *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). "Common sense, as well as constitutional law, compels the conclusion that government

-6-

must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick v. Takushi*, 504 U.S. 428,434 (1992)(quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

When deciding whether a state election law violates First[7] and Fourteenth Amendment associational rights, the Court must weigh the "'character and magnitude'" of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. *Burdick*, at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less taxing review, and a state's "'important regulatory interests'" will usually be enough to justify "'reasonable, nondiscriminatory restrictions.'" *Id.* at at 434 (quoting *Anderson*, at 788).

Under Ohio law, a board of elections must reject an invalid petition and refuse to certify the petitioner's candidacy for the ballot. *State ex rel. Loss v. Bd. of Elections of Lucas County*, 29 Ohio St. 2d 233, 281 N.E.2d 186 (Ohio 1972). Under the terms of Ohio Revised Code § 3501.38(E)(1), on each petition paper:

> [T]he circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to

---

[7]     Although Plaintiff does not mention the First Amendment in his Verified Complaint, the Court notes that his right to seek office emanates from the constitutional protections afforded there, including the right to associate and to express his political opinions.

the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code. On the circulator's statement for a declaration of candidacy or nominating petition for a person seeking to become a statewide candidate or for a statewide initiative or a statewide referendum petition, the circulator shall identify the circulator's name, the address of the circulator's permanent residence, and the name and address of the person employing the circulator to circulate the petition, if any.

Ohio Rev. Code § 3501.38(E)(1). Further, the statute provides:

(F)     Except as otherwise provided in section 3501.382 of the Revised Code, if a circulator knowingly permits an unqualified person to sign a petition paper or permits a person to write a name other than the person's own on a petition paper, that petition paper is invalid; otherwise, the signature of a person not qualified to sign shall be rejected but shall not invalidate the other valid signatures on the paper.

(G)     The circulator of a petition may, before filing it in a public office, strike from it any signature the circulator does not wish to present as a part of the petition.

Ohio Rev. Code § 3501.38(F) & (G).

Plaintiff did not "strike" the signatures he subjectively believed to be invalid, as required by Ohio Revised Code § 3501.38(G). Instead, he calculated the number of signatures he considered valid, and inserted that number in his circulator's declaration. A review of the part-petition reveals that, as to most of the signatures Plaintiff believed to be invalid, he inserted the word "no" at the end of the line containing the signature, without striking it, so as to indicate that he did not wish to present it as part of the petition, as required by Ohio Revised Code § 3501.38(G). Thus, as it stands, the number of signatures indicated by the Plaintiff, as the circulator, is less than the actual number of signatures on the part-petition. As such, each of these part-petitions is invalid.

Ohio law requires that the circulator of a petition paper indicate the number of signatures

on each petition paper. Ohio Rev. Code § 3501.38(E)(1). This requirement that the circulator

indicate the number of signatures contained on the petition paper is established as a "'substantial,

reasonable requirement.'" *State ex rel. Citizens for Responsible Taxation v. Scioto County Bd. Of*

*Elections*, 65 Ohio St. 3d at 172, 602 N.E.2d 615 (Ohio 1992)(quoting *State ex rel. Loss v. Lucas*

*County Bd. of Elections*, 29 Ohio St. 2d 233, 234, 281 N.E.2d 186 (Ohio 1992)).

The Ohio Secretary of State has instructed boards of elections that Ohio Revised Code §

3501.38 "requires that if the number indicated by the circulator is less than the actual number of

signatures, the entire part-petition must be invalidated." *Rust v. Lucas County Bd. of Elections*,

108 Ohio St. 3d 139, 142, 841 N.E.2d 766 (Ohio 2005). In *Rust*, the petitioner lodged the

precise argument raised by Plaintiff in the instant matter:

> Rust claims that the reason the circulators' statements specified a number of
> signatures less than the number of signatures contained on the part-petitions was
> that he had realized that an unqualified person had signed the part-petitions and he
> did not want to violate the R.C. 3501.38(E)(1) requirement that "all signers were
> to the best of the circulator's knowledge and belief qualified to sign." But Rust
> could have complied with all of the requirements of R.C. 3501.38(E)(1) by striking
> the signatures of persons he had discovered to be unqualified before submitting the
> petition to the board of elections. See R.C. 3501.38(G) ("The circulator of a
> petition may, before filing it in a public office, strike from it any signature the
> circulator does not wish to present as part of the petition"); *State ex rel. Oster v.*
> *Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 484, 756 N.E.2d 649.
> Thus, Rust was not left without any remedy when he discovered, before filing the
> petition, that an unqualified person had signed it.

*Rust*, 93 Ohio St.3d at 141, 756 N.E.2d at 768-69. "The purpose of this requirement is to protect

against signatures being added after the circulator's statement is made." *Id*.

Clearly, Plaintiff's petitions did not meet the requirements of Ohio Revised Code §

3501.38(E)(1). All but one of the part-petitions submitted by Plaintiff contained discrepancies with

respect to the number of signatures. On eight of the nine part-petitions, the number of signatures

certified as witnessed by circulator is less than the number of actual signatures on the petition.

As stated by the Sixth Circuit:

There is no bright-line test to determine when a state oversteps it bounds and impermissibly infringes on the constitutional rights of voters.... Courts must undertake the difficult task of considering and weighing the asserted injury to fundamental constitutional rights, the precise interest of the state in the regulation at issue, and the extent to which it is necessary to burden important rights in order to achieve any important state interests.... When a state promulgates a regulation which imposes a severe burden on individuals' rights, that regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance. However, the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.

*Lawrence v. Blackwell*, 430 F.3d 368, 372-73 (6th Cir. 2005) (internal quotations and citations omitted).

For purposes of considering emergency injunctive relief, the Court concludes that Ohio Revised Code § 3501.38(E)(1), as applied in this case, is within Ohio's constitutional authority to regulate elections. Accordingly, because the Court finds that the reasonable and nondiscriminatory burdens imposed by Ohio Revised Code § 3501.38 on Plaintiff's First and Fourteenth Amendment rights are justified by Ohio's important regulatory interests, Plaintiff has not demonstrated a substantial likelihood of success on the merits.

**B.    Irreparable Harm to Plaintiff**

Plaintiff has not demonstrated that he will likely prevail in establishing a constitutional violation. Without such a showing, he is unable to demonstrate irreparable injury.

**C.    Substantial Harm to Others and the Public Interest**

As set forth above, the State of Ohio has a strong interest in preserving the integrity of its election process. Where a court must decide whether to issue a temporary restraining order weeks

-10-

before an election, the Supreme Court has counseled that, "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 127 S. Ct. 5, 7 (2006).

The Court concludes that substantial harm will befall others, primarily Ohio voters, and that the public interest will be harmed if the injunction is granted. Neither the voters nor the public interest is served by a TRO before an imminent election. *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006). "There is also a strong public interest in permitting legitimate statutory processes to operate to preclude voting by those who are not entitled to vote. . . . [T]here is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the middle of the submission of absentee ballots." *Id.* (citing *Summit County Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004)).

## IV.

For the foregoing reasons, Plaintiff's Motion for Temporary Restraining Order is **DENIED.**

**IT IS SO ORDERED.**

_2 - 6 - 2008_
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**